UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| CHARLES F. BURRILL | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DEBORAH A. JAMES, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | CIVIL NO. |
| v. | ) | |
| | ) | |
| SOMERSET COUNTY; DALE | ) | |
| LANCASTER, in his official capacity as Sheriff | ) | |
| of the Somerset County Sheriff's Office; | ) | |
| SOMERSET COUNTY COMMISSIONERS, | ) | |
| Robert Sezak, Cyprien Johnson, Dean Cray, | ) | |
| Newell Graf, Lloyd Trafton, in their official | ) | |
| capacity as Somerset County Commissioners, | ) | |
| | ) | |
| Defendants | ) | |

**COMPLAINT**
**JURY TRIAL REQUESTED**
**<u>INJUNCTIVE RELIEF SOUGHT</u>**

1.      This is a civil rights action by Plaintiffs, Charles Burrill ("Burrill" or "Plaintiff") and Deborah James ("James" or "Plaintiff"), against Somerset County, Sheriff Dale Lancaster, in his official capacity and the Somerset County Commissioners, in their official capacity ("Defendant"), under the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. §§ 4551 et seq.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.; and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §§ 701 et seq. for injunctive relief, civil penal damages, compensatory damages, attorney's fees and litigation expenses, and other relief arising from Defendant's failure to provide Burrill and James, who are deaf, with effective communication.

1

2.     Charles Burrill is in his 70s and has lived on the same private road in Palmyra, Maine for 28 years. Burrill resides with his significant other, Deborah James, and at times his son, Charles Burrill, and his grandson, John Ryan. Burrill is deaf and communicates in American Sign Language (ASL). Over the years, Burrill has come into contact with Defendant multiple times. The Sheriff's Office was at all relevant times aware of Burrill's disability, including that he communicates in ASL. In the late spring, summer and early fall of 2018, Burrill was visited by officers from the Sheriff's Office at least three times: on June 1st, July 4th, and September 26th in connection to complaints between the neighbors. Despite their knowledge of Burrill's disability, Defendant failed to provide auxiliary aids and services to ensure effective communication with Burrill on each of the occasions. Specifically, they failed to arrange for a qualified sign language interpreter, despite repeated requests on Burrill's behalf. Instead, Defendant attempted to use Burrill's family members, who do not know or only have rudimentary knowledge of ASL and are not qualified interpreters, as interpreters. Burrill files this action to seek injunctive relief so that he will be provided with effective communication in the future, and for damages for violation of his civil rights under the ADA, Section 504, and the MHRA.

3.     James resides with Burrill in Palmyra, Maine. She is deaf and communicates in American Sign Language (ASL). Over the years, James has come into contact with Defendant multiple times as a result of neighborly and domestic disputes and requests for assistance. The Sheriff's Office was at all relevant times aware of James' disability, including that she communicates in ASL. James and others on her behalf have requested an ASL interpreter for interactions with Defendant multiple times. Defendant has nevertheless failed to provide auxiliary aids and services – namely, ASL interpretation – to ensure effective communication

with James. James files this action to seek injunctive relief so that she will be provided with effective communication in the future, and for damages for violation of her civil rights under the ADA, Section 504, and the MHRA.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367 for Plaintiffs' claims arising under Title II of the ADA, 42 U.S.C. § 12132, and Section 504, 29 U.S.C. § 794.

5.      This court has subject matter jurisdiction over Plaintiffs' state claims pursuant to 28 U.S.C. § 1367.

6.      In this action, Plaintiffs Burrill and James suffered injuries and barriers to access and now seek damages and injunctive relief.

7.      Venue lies in the District of Maine under 28 U.S.C. §§ 1391(b)(a) and (b)(2) in that Defendant resides and transacts business, and a substantial part of the events or omissions giving rise to the violations alleged in this Complaint occurred, in this District.

## PROCEDURAL HISTORY

8.      Prior to filing this civil action, Burrill filed a timely complaint of discrimination with the Maine Human Rights Commission on the bases alleged herein.

9.      On March 17, 2020, the Maine Human Rights Commission issued a right to sue letter to Burrill, authorizing Burrill to file a civil action to attempt relief under the Maine Human Rights Act and that such action may be commenced within two years of the date of unlawful discrimination or within 90 days of the letter.

10.    This lawsuit is filed within 2 years of the unlawful discrimination alleged herein for Burrill and James and within 90 days of the letter issued by the Maine Human Rights Commission for Burrill.

## PARTIES

11.    Plaintiff Charles F. Burrill is a resident of Palmyra, Maine who is deaf and communicates in American Sign Language ("ASL"). Burrill meets the essential eligibility requirements for receipt of services from Defendant. Burrill is a qualified individual with a disability under the ADA, Section 504, and the MHRA.

12.    Plaintiff Deborah A. James is a resident of Palmyra, Maine. James is deaf and communicates in ASL. James meets the essential eligibility requirement for receipt of services from Defendants. James is a qualified individual with a disability under the ADA, Section 504, and the MHRA.

13.    Sheriff Dale Lancaster is the chief county law enforcement officer in Somerset County and is responsible for administering and directing the Somerset County Sheriff's Department. 30-A M.R.S.  Sheriff Lancaster has the custody and charge of the county jail and of all prisoners in the jail.  30-A M.R.S. 1501.

14.    The Somerset County Commissioners, in their official capacity, have final authority over the operation of all county offices by elected or appointed county officials. 30-A M.R.S. § 102.

13.    Somerset County, Sheriff Lancaster and the Somerset County Commissioners are an instrumentality of the Somerset County government and therefore are a public entity within

the meaning of the MHRA and Title II of the ADA. 5 M.R.S. §§ 4553(8-C); 42 U.S.C. § 12131(1)(B).

15.    At all relevant times to this complaint, Defendant received federal financial assistance and is therefore subject to the requirements of Section 504. In fiscal years 2018 and 2019, Defendant received approximately $900,000 in federal assistance to be used for Defendant's Corrections programs and activities.

## JURY TRIAL DEMAND

16.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a jury trial on all issues triable as of right by jury.

## FACTS

17.    At all material times relative to this complaint, Burrill was deaf. His primary language is American Sign Language (ASL), not spoken or written English.

18.    At all material times relative to this complaint, Charles Burrill has resided with James and his family in Palmyra, Maine. Palmyra is a town in Somerset County.

19.    In order to have effective communication, Burrill requires qualified ASL interpreters.

20.    At all material times relative to this complaint, James was deaf. Her primary language is ASL, not spoken or written English.

21.    At all material times relative to this complaint, Deborah James has resided with Charles Burrill and his family in Palmyra, Maine. Palmyra is a town in Somerset County.

22.    In order to have effective communication, James requires qualified ASL interpreters.

23.    Over the years, Plaintiffs have needed assistance from the Somerset County Sheriff's Office or they have been involved in disputes which have resulted in the Somerset County Sheriff's Office dispatching officers to their address on numerous occasions.

24.    On each of these occasions, the officer or officers dispatched to Plaintiffs' address were made aware that they are deaf prior to arriving at their address. Despite knowledge of Plaintiffs' hearing disability and their resulting need for auxiliary aids or services to achieve effective communication, the Sheriff's Office failed to provide such aids or services.

25.    The Sheriff's Office failed to provide auxiliary aids or services necessary to ensure effective communication with Burrill and James, namely ASL interpretation, even after repeated requests by them or by others on their behalf.

26.    During each visit to Burrill and James's address, Defendant communicated information pertaining to their legal rights and legal status without effectively communicating with them.

20.    Defendant used or tried to use Burrill's son or grandson to "interpret", without their consent and Burrill's consent. Burrill's son and his grandson have only a rudimentary knowledge of sign language and have no formal training or qualifications as sign language interpreters. Attempts to communicate with Burrill through his son and grandson did not result in effective communication. On other occasions, Defendant tried writing to communicate and Defendant conditioned making a complaint on their writing it in English. Burrill and James cannot and do not communicate in written or spoken English.

21.    Plaintiffs are citizens of Palmyra, Somerset County and intend to continue to residing there.

**Plaintiffs' Interactions with Defendant in the Fall, Summer and Spring of 2018**

**June 1, 2018**

22.    On June 1st, 2018, Defendant dispatched Deputy Stephen Armiger ("Armiger") to Plaintiffs' address in response to a "civil complaint" from a neighbor regarding property lines.

23.    Burrill's neighbor complained that Burrill had driven over wooden stakes that she had placed along the edge of her property. Armiger notes in his report that this complaint involved 3 wooden stakes with an estimated value of $10.00.

24.    Armiger was aware prior to arriving at the address that Burrill is deaf and communicates in ASL.

25.    Armiger first went to the neighbor's residence and asked the neighbor about what had occurred.

26.    Armiger then went to Plaintiffs' residence to discuss the neighbor's complaint. Armiger had not made any arrangements for a sign language interpreter to meet him at the address, nor had he arranged for any other auxiliary aids or services to achieve effective communication.

27.    When Armiger went to Plaintiffs' residence, he made contact with Burrill but could not communicate with Burrill because Burrill is deaf. Instead, Armiger attempted to communicate with Burrill through Burrill's son. Burrill's son has only a rudimentary knowledge of sign language and has no training or qualification as an interpreter.

28. Burrill and Burrill's son made it known that Burrill needs an ASL interpreter and that Burrill could not effectively communicate with Armiger. Burrill expressed confusion about what was being communicated. Armiger still did not make any modifications or provide any auxiliary aids or services to ensure effective communication with Burrill.

29. Armiger did not give Burrill the opportunity or means to explain what had occurred, despite having afforded Burrill's neighbor that opportunity.

30. Armiger issued Burrill a Uniform Summons and Complaint for Criminal Mischief for allegedly driving over three wooden stakes. Armiger did not communicate what the Summons and Complaint was or what its legal implications were for Burrill. Armiger instructed Burrill to sign his name on the paperwork.  Burrill indicated he could not understand. Armiger instructed him to sign his name on the paperwork anyway.

31. After Armiger left, Burrill still did not know why Armiger had come to his address. He did not understand the summons Armiger had issued. Burrill's son was not able to relay Armiger's communications to him.

32. Armiger did not provide Burrill with effective communication at any point of their interaction on June 1, 2018.

### June 27, 2018

33. On June 27, 2018, Burrill and James called the Sheriff's Office to report a complaint regarding the roadway.

34. Burrill and James told the Sheriff's Office that they are deaf and they requested an interpreter to communicate.

35.     Dispatch advised the Sheriff's Office that Burrill and James were calling to make a complaint about the roadway.

36.     Sheriff's Office dispatched Deputy Brandon Lambert ("Lambert") to the scene.

37.     Sheriff's Office did not contact an interpreter.

38.     Lambert was aware prior to arriving at the address that Burrill is deaf and communicates in ASL. Lambert arrived at the scene without an interpreter. Lambert attempted to communicate through Burrill's son.

30.     Burrill and James were unable to communicate effectively with Lambert to make a complaint.

**July 4, 2018**

40.     On July 4, 2018, the Sheriff's Office received a complaint from Burrill's neighbor about Burrill.

41.     Sheriff's Office dispatched Deputy Brandon Lambert ("Lambert") to the scene.

42.     Lambert was aware prior to arriving at the address that Burrill is deaf and communicates in ASL.

43.     Lambert did not make arrangements for a qualified sign language interpreter to go to Burrill's address, nor did he attempt to provide any other auxiliary aid or service to ensure effective communication with Burrill.

44.     When he arrived at Burrill's address, Lambert spoke with Burrill's son. He informed Burrill's son that Burrill was going to be warned for harassment. He also told Burrill's

son that if Burrill's actions continued, he would be charged with harassment. Lambert told Burrill's son to relay this information pertaining to Burrill's legal status to Burrill.

45.     Lambert did not directly communicate any of this information to Burrill. In fact, Lambert did not interact with Burrill on July 4, 2018.

46.     Lambert attempted to use Burrill's son as an interpreter when he asked Burrill's son to inform Burrill that he was being issued a warning and that he stood to be charged with harassment in the future.

47.     Burrill's son is not a qualified sign language interpreter. Burrill's son has only a rudimentary knowledge of ASL.

48.     Burrill was not given the opportunity or the means to ask questions or clarify information about the warning issued to him.

## September 11, 2018

49.     On September 11, 2018, Sheriff's Office dispatch received a call and request for assistance for a motor vehicle accident involving Plaintiffs that occurred on the road where they live.

50.     Dispatch advised Deputy Armiger that the caller was Burrill's grandson, who was not at the scene but calling on behalf of Plaintiffs. Burrill's grandson advised dispatch, who in turn advised Armiger, that Plaintiffs felt the other vehicle struck them on purpose, that they need assistance and that they are deaf.

51.     Sheriff's Office dispatched Armiger to the scene.

52.     Neither Sheriff's Office nor Armiger contacted an interpreter.

10

53.   Armiger was aware prior to arriving at the address that Plaintiffs are deaf and communicate in sign language. Armiger arrived at the scene without an interpreter.

54.   When Armiger arrived at the scene, James indicated she did not want to speak with him because there was not an interpreter.

55.   Armiger did not contact an interpreter.

56.   Instead, Armiger attempted to communicate with Plaintiff through written English, which is not effective communication for Plaintiffs.

57.   Next, Armiger also attempted to communicate with Plaintiffs at the scene through Video Relay Service (VRS). VRS is a type of telephone call provided for by the Federal Communications Commission (FCC).  VRS is only to be used when a person with a hearing disability desires to communicate through the telephone system. VRS is not a substitute for "in-person" interpreting. 47 C.F.R. 64.601(17).

58.   Burrill and James wanted to make a complaint that their neighbor intentionally pulled out behind them, tailgated them, and caused them to be fearful that their car would be stricken. But Armiger only gave them the option of making a written complaint. Burrill and James do not read and write English effectively. Burrill and James were not able to make a written complaint or any complaint.

59.   Armiger returned to Plaintiffs' residence the next day to follow up on the complaint but did not bring an interpreter and had no contact with Plaintiffs. Armiger did not make contact with the neighbors to follow up on Plaintiffs' complaint.

60.   The following day, Armiger concluded in his narrative, "case closed, no crime involved."

**September 16 – 17, 2018**

11

61.   On September 16, 2018, Plaintiff Deborah James contacted the Sheriff's Department to complain that her neighbor tried to talk to her and drove her vehicle next to James' in a threatening manner. James requested assistance from the Sheriff's Department to make a complaint.

62.   On September 16 at 6:23 p.m., Sheriff's Office dispatched Deputy Brandon Lambert ("Lambert") to James' road in response to her call.

63.   Sheriff's Office was aware that James is deaf.

64.   Sheriff's Office did not contact an interpreter.

65.   Lambert was aware prior to arriving at the address that James is deaf and communicates in sign language. Lambert arrived on the scene without an interpreter.

66.   Lambert went to the neighbor's residence only and spoke with the neighbor, who shared her side of the story. Lambert did not go to James' residence next door to act or attempt to speak with her at all.

67.   Lambert closed the case without speaking with James or rendering any assistance to her.

68.   On September 17, 2018 at 9:45 a.m., James called the Sheriff's Office to complain that she requested assistance the previous day and the deputy went to the house next door and did not speak with her about her complaint.

69.   On September 17, at 9:48 a.m., dispatch accessed a protection order that James' neighbor has against her. Dispatch noted, "Caller [James] would like someone to explain the restraining order to her."

70.   James requested an interpreter to explain the restraining order to her because she does not read English and did not understand it.

12

71.    Sheriff's Office was at all times aware that James is deaf and requires a sign language interpreter for effective communication. Sheriff's Office did not contact an interpreter.

72.    On September 17 at 11:35 a.m., dispatch noted that "several deaf people live there extremely hard to understand them, they are going down to the court and ask for an interpreter for assistance."

### September 26, 2018: Arrest

73.    On September 26, 2018, the Sheriff's Office received a complaint from Burrill's neighbor.

74.    Lambert was dispatched to Burrill's address.

75.    Once again, Lambert was aware of Burrill's disability and his resulting need for auxiliary aids and services (namely, a qualified sign language interpreter) for effective communication before Lambert arrived at Burrill's residence.

76.    As on the two prior occasions, no arrangements were made to provide Burrill with an auxiliary aid or service to provide effective communication.

77.    When Lambert arrived on the scene, Burrill was inside his house with his family. Burrill was settled in for the evening and wearing his pajamas. There was no evidence that he was actively engaged in the conduct of which his neighbor complained.

78.    Lambert first went to the neighbor's house to speak with the neighbor and her husband about the complaint.

79.    Lambert then went to Burrill's residence. Lambert spoke with Burrill's son, who is not a qualified sign language interpreter.

80.    Lambert told Burrill's son that he was there to arrest Burrill. Burrill's son requested an interpreter on Burrill's behalf. Lambert did not provide an interpreter, and instead attempted to communicate with Burrill through Burrill's son.

81.    Lambert arrested Burrill, handcuffed Burrill's hands behind his back, and placed Burrill in the back of the police cruiser. Burrill's son informed Lambert again that Burrill needed an ASL interpreter.

82.    Lambert denied the request for an ASL interpreter, stating that an interpreter was not coming and that he did not need to provide an interpreter.

83.    Burrill did not know why he was being arrested. He could not communicate with his son or with Lambert because his hands were handcuffed behind his back and because there was no interpreter present to ensure effective communication.

84.    Soon after Burrill was arrested, Burrill's grandson, John Ryan, called the jail to request an interpreter.

**September 26 – 29, 2018: Somerset County Jail**

85.    Lambert transported Burrill to the Somerset County Jail on September 26. There was no ASL interpreter at the jail when Lambert and Burrill arrived, despite the request for an interpreter made on Burrill's behalf by his son. Burrill did not know why he was arrested.

86.    Lambert did not inform the jail of Burrill's request for an interpreter, which he needs for effective communication.

87.    Burrill was given paperwork to sign at the jail but he was not provided an interpreter to interpret the document for him. Burrill does not read written English and did not

understand what he was being asked to sign. He indicated by gesturing and facial expression that he did not understand what the papers said. He refused to sign the document.

88.     Burrill was placed in a cell at the jail. He still did not know why he had been arrested.

89.     Burrill was not provided an interpreter at any point during his arrest, processing into jail, or time in jail on September 26th.

90.     On September 27th, Burrill was taken to the nurse to receive medication. The nurse at the jail attempted to write notes to him to communicate. Burrill cannot read.

91.     The nurse then attempted to use a video relay service to communicate with Burrill. The video relay service interpreter was not qualified to interpret medical, mental health, or legal questions and was not able to interpret an in-person meeting.

92.     Finally, the nurse arranged for an ASL interpreter to come to the jail to interpret the health questionnaire to Burrill. A qualified ASL interpreter arrived within about two hours of the request. The nurse was able to effectively administer the medical screening when Burrill was provided the services of a qualified, on-site ASL interpreter. This was the only time while in jail that Burrill was provided an auxiliary aid or service, and it was the only time that he was able to access effective communication.

93.     Burrill was never provided with an opportunity to use a video phone while he was in jail. Defendant never informed him that any video phone was available for his use. Therefore, Burrill was unable to make any calls to his family or a lawyer.

94.    On September 28th, an officer retrieved Burrill from his cell, placed him in handcuffs, and Burrill was then transported to the courthouse.

95.    Burrill was not provided an interpreter until he arrived at the court. There was no communication as he was being transported from the jail to court.

96.    Burrill was provided an interpreter by the court on September 28th. This was the first time that he was made aware of the charges against him and the first time that he understood why he had been arrested and kept in jail for three days.

97.    The charges against Burrill were later dismissed by the District Attorney's office "in the interest of justice."

### Defendant Lacks Any Policy and Procedure to Ensure Effective Communication for Individuals who are Deaf

98.    Defendant has no policy or procedure regarding the provision of qualified sign language interpreters to individuals who are deaf or hard of hearing.

99.    Defendant has no policy or procedure regarding ensuring effective communication with people who are deaf and hard of hearing.

100.   At all times relevant to this complaint, Defendant lacked a written policy or procedure to guide police interactions with individuals with disabilities.

101.   At all times relevant to this complaint, Defendant lacked a formal department policy for compliance with the ADA or the MHRA.

102.   At all times relevant to this complaint, Defendant has received federal financial assistance.

103.   Burrill and James continue to reside at in the Town of Palmyra, Somerset County.

Burrill and James seek injunctive relief to ensure that Defendants will provide them with effective communication in the future.

## COUNT I
## TITLE II OF THE AMERICANS WITH DISABILITIES ACT
## 42 USC § 12131 et seq.

104.   Plaintiffs incorporate the allegations set forth in the remainder of the Complaint as if fully set forth herein.

105.   Burrill's hearing loss is a physical impairment that substantially limits one or more major life activities, including his ability to hear and to communicate. Burrill has a record of such an impairment and he was regarded as having such an impairment. 42 USC § 12102.

106.   James's hearing loss is a physical impairment that substantially limits one or more major life activities, including her ability to hear and to communicate. James has a record of such an impairment and she was regarded as having such an impairment. 42 USC § 12102.

107.   Therefore, Burrill and James are individuals with disabilities under Title II of the ADA. 42 USC § 12102.

108.   Title II prohibits public entities such as Defendant from excluding individuals with disabilities from participation in or denying them the benefits of their services, programs, or activities, or otherwise subjecting such individuals to discrimination.  42 USC § 12132.

109.   Defendant excluded Plaintiffs from participation in and/or denied them the benefits of its services, programs, and/or activities, and/or subjected them to discrimination on the basis of disability in violation of Title II and its implementing regulations.

110.   Such discrimination includes but is not limited to:

a.  Denying Plaintiffs the opportunity to participate in or benefits from an aid, benefit, or service. 28 CFR § 35.130(b)(1)(i).

b.  Affording Plaintiffs the opportunity to benefit from an aid, benefit, or service that is not equal to that afford others. 28 CFR § 35.130(b)(1)(ii).

c.  Providing Plaintiffs with aids, benefits, and services that are not effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others. 28 CFR § 35.130(b)(1)(iii).

d.  Using criteria or methods of administration that have the effect of subjecting Plaintiffs to discrimination on the basis of disability. 28 C.F.R. 35.130(b)(3)(i).

e.  Failing to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination against Plaintiffs on the basis of disability. 28 CFR § 35.130(b)(7).

f.  Failing to ensure that communications with Plaintiffs were as effective as communications with others. 28 CFR § 35.160(a)(1).

g.  Failing to furnish appropriate auxiliary aids and services where necessary to afford Plaintiffs an equal opportunity to participate in, and enjoy the benefits of, Defendant's services, programs, or activities. 28 CFR § 35.160(b)(1).

h.  Failing to give primary consideration to the requests of Plaintiffs Burrill and James concerning the types of auxiliary aids and service necessary. 28 CFR § 35.160(b)(2).

18

      i.   Relying on an adult accompanying Plaintiffs to facilitate communication in the absence of an imminent threat to safety and without consent from Plaintiffs and the accompanying adult. 28 CFR § 35.160(c)(2).

111.  Defendants' actions described in this complaint were intentional and/or were taken with deliberate indifference to the rights of Plaintiffs James and Burrill to effective communication.

112.  As a direct and proximate result of Defendants' acts, omissions, and violations alleged above, Plaintiffs have suffered damages.

113.  Plaintiffs have been injured and aggrieved and will continue to be injured and aggrieved by Defendant's discrimination against them.

114.  Defendant had knowledge of its obligations under the ADA and was deliberately indifferent to the rights of Plaintiffs.

115.  Defendant's acts and omissions were intentional, willful, wanton, in bad faith, and/or malicious.

WHEREFORE, Plaintiffs Burrill and James respectfully pray that this Court enter judgment in their favor to include, but not be limited to, an order:

     a.   To declare that Defendant's actions and inactions violated Title II of the Americans with Disabilities Act;

     b.   To permanently enjoin Defendant from any practice, policy, and/or procedure which will deny Plaintiffs equal access to, and benefit from,

Defendant's services or which deny Plaintiffs effective communication with the Defendant;

c.  To award Plaintiffs compensatory damages;

d.  To award Plaintiffs nominal damages;

e.  To award further enforcement and other equitable relief to ensure that such training and policies are maintained in the future;

f.  To award reasonable attorney fees and costs, and any and all other relief that may be necessary and appropriate.

g.  To award such additional or alternative relief as may be just, proper and equitable.

## COUNT II
## SECTION 504 OF THE REHABILITATON ACT, 29 U.S.C. § 794 et seq.

116.  Plaintiffs incorporate the allegations set forth in the remainder of the Complaint as if fully set forth herein.

117.  Plaintiff Burrill is deaf and is substantially limited in his major life activities, including his ability to hear and to effectively communicate with others who are not fluent in ASL. Burrill is substantially limited in his major bodily functions, including auditory system. Burrill is an individual with a disability under Section 504 of the Rehabilitation Act, as amended.

118.  Plaintiff James is deaf and is substantially limited in her major life activities, including her ability to hear and to effectively communicate with others who are not fluent in ASL. James is substantially limited in her major bodily functions, including auditory system. James is an individual with a disability under Section 504 of the Rehabilitation Act, as amended.

20

119.  Defendant Somerset County Sheriff's Office receives federal financial assistance as that term is used in Section 504. In fiscal years 2018 and 2019, Defendant received approximately $900,000 in federal assistance per year.

120.  Section 504 requires that no qualified individual with a disability, on the basis of that disability, be excluded from participation in or be denied the benefit of the services, programs, activities of, or be otherwise discriminated against by a recipient of federal financial assistance.

121. Defendant violated Section 504 in numerous ways, including but not limited to the all of the discriminatory actions enumerated in Count I of this Complaint, as well as the discriminatory actions described below.

122.  Prior to Burrill's interactions with Sheriff's Office deputies, Defendant was aware that Burrill is deaf and that he communicates through sign language.

123.  During Defendant's interactions with Plaintiffs Burrill and James, deputies were informed that Plaintiffs require an ASL interpreter for effective communication.

124.  The deputies and jail staff who interacted with Burrill had actual knowledge of his disability and limitations, yet during the majority of their interactions with Burrill, he was denied effective communication.

125.  By not using a qualified ASL interpreter, Defendant did not explain the actions it was taking against Burrill or the implications those actions had on his legal status, nor did Defendant permit Burrill to ask questions or to have a real understanding of the warnings and summonses he was issued.

126.  By not using a qualified ASL interpreter, Defendant deprived Burrill of the opportunity to participate in a dialogue about his neighbor's complaints against him. He was not given the benefit of information exchange that Defendant allowed his neighbors. While his neighbors had the benefit of engaging in a verbal exchange to provide Defendant with information in support of their allegations against Burrill, Burrill was denied any such benefit by Defendant's failure to provide him with effective communication.

127.  By not using a qualified ASL interpreter, Defendant also deprived Burrill the benefit of knowing what he was being warned of or charged with. Non-disabled individuals have the benefit of knowing why a police officer is at their house, what they are being issued a warning or a summons for, what the implications there are for their future conduct, etc. Non-disabled individuals also have the benefit of having a ticket or summons explained to them if necessary, and of asking questions and clarifying information as necessary. Burrill was denied all of these benefits because of Defendant's failure to provide effective communication.

128.  Because of the failure to provide effective communication, Burrill had an incomplete understanding of what was happening during his interactions with Defendant.

129.  Accordingly, Defendant discriminated against Plaintiffs by failing to provide appropriate auxiliary aids or services necessary to ensure effective communication with individuals who are deaf or hard of hearing, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

130.  Defendant's policies, practices, and procedures, particularly those described above, violated Plaintiffs' rights under Section 504 of the Rehabilitation Act by discriminating against Plaintiffs on the basis of disability.

131.   Defendant's actions were intentional, with reckless disregard, and with deliberate indifference to the rights and needs of Plaintiffs Burrill and James.

132.   As a result of Defendant's actions, Plaintiffs Burrill and James have been damaged and have suffered injuries and experienced emotional suffering, pain, and anguish.

WHEREFORE, Plaintiffs Burrill and James respectfully pray that this Court grant the following relief against Defendants, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies, and procedures have subjected Plaintiffs to discrimination in violation of Section 504 of the Rehabilitation Act and permanently enjoining the defendant from any practice, policy, and/or procedure which will deny Plaintiffs equal access to, and benefit from Defendants' services or which deny Plaintiffs effective communication with Defendants. This includes entering a permanent injunction ordering Defendants:

    a. To immediately begin providing Plaintiffs with qualified ASL interpretation during substantive, non-exigent interactions;

    b. To cease discrimination against Plaintiffs and all deaf or hard of hearing individuals;

    c. To promulgate and comply with policies and procedures to ensure that Defendants and their staff do not discriminate against individuals who are deaf and hard of hearing;

d.  To promulgate and comply with procedures to ensure that Defendants will provide and pay for interpreter services when needed by individuals who are deaf or hard of hearing;

e.  To award compensatory damages to Plaintiffs;

f.  To award nominal damages to Plaintiffs;

g.  To award reasonable costs and attorney's fees; and

h.  To award any and all other relief that may be necessary and appropriate.

**COUNT III**
**MAINE HUMAN RIGHTS ACT, 5 M.R.S.A. §§ 4551 et seq.**

133.  Plaintiffs incorporate the allegations set forth in the remainder of the Complaint as if fully set forth herein.

134.  Plaintiff Burrill is deaf or has abnormal hearing loss. 5 M.R.S. § 4553-A(1)(B). His hearing impairment is a physical impairment that substantially limits one or more major life activities, including his ability to hear and to communicate, and significantly impairs physical or mental health. 5 M.R.S. §§ 4551-A(1)(A)(1)&(2). Burrill has a record of deafness or abnormal hearing loss and he was regarded as having a disability. 5 M.R.S.A. §§ 4553-A(1)(C)&(D).

135.  Plaintiff James is deaf or has abnormal hearing loss. 5 M.R.S. § 4553-A(1)(B). Her hearing impairment is a physical impairment that substantially limits one or more major life activities, including her ability to hear and to communicate, and significantly impairs physical or mental health. 5 M.R.S. §§ 4551-A(1)(A)(1)&(2). James has a record of deafness or abnormal hearing loss and she was regarded as having a disability. 5 M.R.S.A. §§ 4553-A(1)(C)&(D).

136. Therefore, Plaintiffs Burrill and James are individuals with disabilities under Subchapter 5 of the Maine Human Rights Act.

137. Defendant violated Subchapter 5 of the Maine Human Rights Act and its interpreting regulations in numerous ways, including but not limited to discriminatory actions which occurred when they:

a. Directly or indirectly refused, discriminated against or in any manner withheld from or denied the full and equal enjoyment to Plaintiffs, on account of disability, any of the accommodations, advantages, facilities, goods, services, or privileges of the public entity, or in any manner discriminated against Plaintiffs in the terms or conditions upon which access to accommodation, advantages, facilities, goods, services, and privileges may depend.

b. Failed to make reasonable modifications in policies, practices, or procedures when modifications are necessary to afford the goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. 5 M.R.S. § 4592(1)(B)

c. Failed to take steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids or services. 5 M.R.S. § 4592(1)(C).

d. Excluded Plaintiffs from participation in, or denied the benefits of the services, programs, or activities of a public entity, or subjected Plaintiffs to discrimination. 5 M.R.S. § 4592(1)(E).

e.  Failed to maintain policies and procedures to ensure compliance with Subchapter 5 of the Maine Human Rights Act, specifically policies that provide equal access and effective communication to individuals with disabilities in compliance with 5 M.R.S. §§ 4591, 4592(1).

f.  Subjected Plaintiffs, on the basis of disability, directly or through contractual, licensing, or other arrangements, to a denial of the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of Defendant. 5 M.R.S. § 4592(4)(A).

g.  Failed to ensure that communications with Plaintiffs were as effective as communications with non-disabled individuals. 5 M.R.S. §§ 4591, 4592(1); 94-348 C.M.R. Ch. 7, § 7.17 (Sept. 24, 2014).

h.  Failed to provide auxiliary aids and services, including a qualified ASL interpreter, and to modify policies and procedures to prevent discrimination against Plaintiffs. 5 M.R.S. §§ 4591, 4592(2).

i.  Failed to take those steps that may be necessary to ensure that Plaintiffs are not excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, namely, qualified ASL interpreters. 94-348 C.M.R. Ch. 7, § 7.17(A),(B)(1) (Sept. 24, 2014).

j.  Failed to furnish appropriate aids and services where necessary to ensure effective communication with Plaintiffs. 94-348 C.M.R. Ch. 7, § 7.17(C)(1) (Sept. 24, 2014).

k.  Relied on adults accompanying Plaintiffs to interpret or facilitate communication. 94-348 C.M.R. Ch. 7, § 7.17(C)(3) (Sept. 24, 2014).

138.  Defendant had knowledge of its obligations under the Maine Human Rights Act and was deliberately indifferent to the rights of Plaintiffs.

139.  Defendant's acts and omissions were intentional, willful, wanton, in bad faith, and/or malicious.

140.  Defendant engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to Plaintiffs' rights.

141.  Defendant knew that Plaintiffs would be harmed by their failure to provide a qualified ASL interpreter.

WHEREFORE, Plaintiffs respectfully pray that this Court enter judgment in their favor to include, but not be limited to, an Order:

a.  To cease and desist from the unlawful practices specified in the order;

b.  To declare that Defendant's actions and inactions violated Subchapter 5 of the Maine Human Rights Act;

c.  To permanently enjoin the Defendant from any practice, policy, and/or procedure which will deny Plaintiffs equal access to, and benefit from, Defendant's services or which will deny Plaintiffs effective communication with Defendant;

d.  To award further enforcement and other equitable relief to ensure that such training and policies are maintained in the future;

    e.   To pay Plaintiffs civil penal damages;

    f.   To pay Plaintiffs nominal damages; and

    g.   To pay Plaintiffs reasonable attorney's fees and costs, and any and all other relief that may be necessary and appropriate.

DATED: May 29, 2020                     /s/ Kristin L. Aiello_____
                                         Kristin L. Aiello, Bar No. 8071
                                         Senior Attorney
                                         DISABILITY RIGHTS MAINE
                                         160 Capitol Street, Suite 4
                                         Augusta, ME  04330
                                         207.626.2774 ext. 223
                                         207.621.1419 (fax)
                                         kaiello@drme.org